FILED

JAN 21 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 08-14401-B-7 |
| Araceli Anderson, | |
| Debtor. | |
| | |
| Beth Maxwell Stratton, Chapter 7 Trustee, | Adv. Proc. No. 09-1010 |
| Plaintiff, | |
| v. | |
| Daniel Harless and Michael Anderson, | |
| Defendants. | |

**MEMORANDUM DECISION REGARDING COMPLAINT FOR
TURNOVER OF PROPERTY OF THE BANKRUPTCY ESTATE**

This disposition is not appropriate for publication. Although it may cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Trudi G. Manfredo, Esq., appeared on behalf of the plaintiff, Beth Maxwell Stratton, chapter 7 trustee (the "Trustee").[1]

Dale I. Gustin, Esq., appeared on behalf of the defendant, Daniel Harless.

---

[1]Subsequent to trial, Beth Maxwell Stratton resigned her position as chapter 7 trustee. On November 3, 2010, Sheryl Strain was appointed to serve as her successor.

1    Before the court is a complaint for turnover of property of the bankruptcy

2    estate filed by the Trustee.  The Trustee seeks to enforce the terms of a promissory

3    note in the original amount of $90,000 (the "Promissory Note") issued during the

4    Debtor's marriage, by the defendant, Daniel Harless ("Harless") to the Debtor's ex-

5    spouse, defendant Michael Anderson ("Michael").  As of the commencement of this

6    case, the unpaid balance of the Promissory Noted was $70,000.  Michael did not

7    appear at the trial and has not pursued his interest in the Promissory Note.  Harless

8    contends that the Promissory Note represents the proceeds of Michael's separate

9    property and is therefore not property of the bankruptcy estate.  He also contends

10    that the Promissory Note is unenforceable and worthless.  For the reason set forth

11    below, Judgment will be entered in favor of the Trustee.

12    This memorandum contains the court's findings of fact and conclusions of

13    law required by Federal Rule of Civil Procedure 52(a), made applicable to this

14    adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.  The

15    bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and

16    11 U.S.C. § 542 [2] and General Orders 182 and 330 of the U.S. District Court for the

17    Eastern District of California.  This is a core proceeding as defined in 28 U.S.C.

18    § 157(b)(2)(A) & (E).

19    **Background and Findings of Fact.**

20    Prior to commencement of the bankruptcy, the Debtor, Araceli Anderson

21    ("Araceli") was married to defendant, Michael Anderson (the "Anderson

22    Marriage").  They were married in 2000 and maintained a residence in Los Banos,

23    California.  Between 2002 and 2007, Michael and Araceli operated at least three

24

25

26    [2]Unless otherwise indicated, all bankruptcy, chapter, code section and rule references
are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy

27    Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the
effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,

28    Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

businesses known as Anderson Property Investments, Anderson Project Management, and Anderson Hauling & Clean-Up.[3]

On or about June 28, 2007, Michael acquired a parcel of commercial property located in Livingston, California (the "Livingston Property"). The grant deed for the Livingston Property stated that title would be held by "Michael L. Anderson, a married man as his sole and separate property." Araceli's name was intentionally omitted from the grant deed. Michael told Araceli that "wives could not be involved," presumably referring to a business venture for development of the Livingston Property.

However, Michael did need Araceli to be involved in the transaction to acquire the Livingston Property. The purchase price of the Livingston Property was approximately $1,050,000. A cash "down payment" of $5,000 was made from funds which were community property of the Anderson Marriage. On or about August 1, 2007, Michael obtained a loan, in his name, in the amount of $525,000 (plus prepaid interest) from West Coast Fund L.P. (the "WCF Loan"). The WCF Loan was secured by a first priority deed of trust against the Livingston Property. Additional funds were obtained through a loan which Araceli and Michael obtained from Leo Kesselman in the amount of $450,000 (the "Kesselman Note"). Both Araceli and Michael signed the Kesselman Note and related security agreements. The Kesselman Note was secured by a second priority deed of trust against the Livingston Property. The Kesselman Note was also secured by four parcels of property owned by Michael and Araceli located in Los Banos, California (the "Los Banos Properties").

On or about July 16, 2007, Araceli signed, at Michael's request, an interspousal transfer deed (the "Interspousal Deed") wherein Araceli purportedly

---

[3]Cover page of Debtor's Voluntary Petition and Statement of Financial Affairs, question 18.

3

relinquished any community property interest in the Livingtson Property and affirmed the title as Michael's sole and separate property. Araceli understood that Michael was going to manage a commercial development on the Livingston Property in which, for some reason, "wives could not be involved." Based on the petition, it appears that Michael and Araceli had previously been involved in various real estate management and investment projects. Araceli understood she was relinquishing control of the Livingston Property to Michael, but she did not intend or understand that she was relinquishing her interest in the Livingston Property. Araceli and Michael were still married and living together at the time. Araceli testified that she would not otherwise have agreed to use community property funds for a down payment on the Livingston Property and to encumber the Los Banos Properties with the Kesselman Note.

On or about August 27, 2007, Michael executed a grant deed transferring the Livington Property to himself and a friend, defendant Harless. Based on that grant deed, Michael and Harless each held legal title to 50% of the Livingston Property as tenants in common. In late February or early March 2008, Michael and Harless entered into a "buyout agreement" whereby Harless agreed to purchase Michael's 50% interest in the Livingston Property. Harless also agreed to assume and hold Michael harmless from all of the outstanding debts against the Livingston Property. As part of that transaction, on or about March 5, 2008, Harless also executed the Promissory Note for $90,000.00 in favor of Michael. With a check dated February 20, 2008, Harless delivered to Michael an initial payment against the Promissory Note in the amount of $20,000. The balance of the Promissory Note, in the amount of $70,000 plus accrued interest at the rate of 5% per annum, was secured by a junior lien against the Livingston Property. The Livingston Property has since been lost to foreclosure and the Promissory Note is unsecured.

Araceli separated from Michael in March 2008 and subsequently filed a petition to dissolve the Anderson Marriage (the "Marital Dissolution Action").

4

Even though Araceli's name was never reflected in title to the Livingston Property, Michael assured Araceli on numerous occasions that she had an equal interest in the Livingston Property.  In May 2008, after their separation and after Michael sold his interest in the Livingston Property to Harless, Michael left a voice mail message for Araceli affirming again that Araceli would receive half of the proceeds from the Promissory Note.  Araceli commenced this bankruptcy case on July 25, 2008.  As of commencement of this case, the community property of the Anderson Marriage had not yet been divided in the Marital Dissolution Action.

**Issues Presented.**

The primary issue in this adversary proceeding is whether the Promissory Note was actually community property of the Anderson Marriage at the commencement of this case.  If so, then it became property of the bankruptcy estate pursuant to § 541(a)(2) and the Trustee is entitled to enforce its terms.  If not, then the Trustee has no interest in the Promissory Note and enforcement is an issue to be resolved between Michael and Harless.  Michael did not appear at trial and has presented no evidence to establish that he has a "separate property" interest in the Promissory Note.[4]

Harless contends that the Promissory Note is Michael's separate property, but that does not expunge Harless' obligation to honor the terms of the Promissory Note.  A secondary issue then is whether Harless has standing to assert and defend Michael's interest in the Promissory Note.  Harless also contends that the Promissory Note is unenforceable and worthless based on allegations of fraud (by Michael) and failure of consideration relating to commercial development of the Livingston Property.  However, those issues were not pled by way of counterclaim

---

[4]Michael Anderson was named and served as a defendant in this adversary proceeding.  On February 12, 2009, he filed a "pro se" responsive pleading generally denying all allegations in the complaint.  Thereafter, Michael attended virtually all of the status conferences, but he did not appear or testify at the trial.

5

1  or affirmative defenses and they will not be considered for the first time here.

2  **Applicable Law.**

3      **The Bankruptcy Estate's Interest in Community Property.**  At the

4  commencement of a bankruptcy case, a married debtor's interest in community

5  property becomes property of the bankruptcy estate under § 541(a)(1) or (a)(2),

6  which provide in pertinent part:

7      (a) The commencement of a case under section 301 . . . of this title creates an
    estate. Such estate is comprised of all the following property, wherever
8      located and by whomever held:

9          (1) . . . all legal or equitable interests of the debtor in property as of the
        commencement of the case.

10

11          (2) All interests of the debtor and the debtor's spouse in community
        property as of the commencement of the case that is–

12              (A) under the sole, equal, or joint management and control of the
            debtor; or

13

14              (B) liable for an allowable claim against the debtor, or for both an
            allowable claim against the debtor and an allowable claim against the
15              debtor's spouse, to the extent that such interest is so liable.

16      The bankruptcy court must look to state law to determine what property

17  interest the bankruptcy estate may hold. *Keller v. Keller (In re Keller)*, 185 B.R.

18  796, 800 (9th Cir. BAP 1995), citing *Butner v. United States*, 440 U.S. 48, 55

19  (1979). The bankruptcy trustee has no greater rights than the debtor in whose shoes

20  she stands. *Id.* at 800-01, citing *Matter of Paderewski*, 564 F.2d 1353, 1356 (9th

21  Cir. 1977).

22      Under federal bankruptcy law the community property of both debtor and

23  nondebtor spouse, or former spouse, becomes property of the bankruptcy estate on

24  the date of the petition. The "[c]ommunity creditors of *both* the filing spouse and

25  the nonfiling spouse would be permitted to share in the community property by

26  filing claims in the bankruptcy case." *Miller v. Walpin (In re Miller)*, 167 B.R. 202,

27  207 (Bankr. C.D. Cal. 1994), quoting *July, 1973 Report of the Commission of the*

28  *Bankruptcy Laws of the United States*, H.R. Doc. No. 137, 93rd Cong., 1st Sess. Pt.

6

1 (1973); § 541(a)(2) (emphasis original). *See also Keller*, 185 at 799-800; *Grimm v. Grimm (In the Matter of Grimm)* 82 B.R. 989, 991-92 (Bankr. W.D. Wis. 1988).

The Bankruptcy Code does not define "community property," though it does identify "community claim" in § 101(7). Therefore, "[b]ankruptcy courts are required to look to state property law . . . to determine the [community] property which is to be included in the bankruptcy estate*." Dumas v. Mantle* (*In Re Mantle*), 153 F.3d 1082, 1084 (9th Cir. 1998), citing *Butner*, 440 U.S. at 55.

As a general rule, in the State of California, all property acquired during a marriage is community property. California Family Code § 760.[5] The "community" presumption is a rebuttable presumption which may be overcome by the party contesting the "community" status of the property. *In re Marriage of Haines*, 33 Cal.App.4th 277, 290 (1995).

However, married couples may also legally hold title to property separately, or together as joint tenants, or tenants in common. A spouse may transmute the status of his or her property from separate property to property held jointly by agreement or transfer. California Family Code § 850. A transmutation is "an interspousal property transaction or agreement that works a change in the character of the property." *Haines*, 33 Cal.App.4th at 293. "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." California Family Code § 852(a).

California courts have held that compliance with California Family Code § 852 alone does not guarantee the validity of a transmutation. "When an

---

[5]California Family Code § 760 states:

Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property.

7

1    interspousal transaction advantages one spouse, [t]he law, from considerations of

2    public policy, presumes such transactions to have been induced by undue influence.

3    Courts of equity . . . view gifts and contracts which are made or take place between

4    parties occupying confidential relations with a jealous eye." *In re Marriage of*

5    *Barneson*, 69 Cal.App.4th 583, 588 (1999), citing *Haines*, 33 Cal.App.4th at 293-

6    94. The statutory basis for these rulings stems from California Family Code § 721

7    which provides:

8    >  [I]n transactions between themselves, a husband and
9    >  wife are subject to the general rules governing fiduciary
     >  relationships which control the actions of persons
10   >  occupying confidential relations with each other. This
     >  confidential relationship imposes a duty of the highest
11   >  good faith and fair dealing on each spouse, and neither
     >  shall take any unfair advantage of the other.

12   Under California Evidence Code § 662, there is a competing presumption

13   based on the properties' title. "The owner of the legal title to property is presumed

14   to be the owner of the full beneficial title. This presumption may be rebutted only

15   by clear and convincing proof." When the "community property" and "undue

16   influence" presumptions conflict with the "title" presumption in California Evidence

17   Code § 662, the Family Code presumptions prevail. *Haines*, 33 Cal.App.4th at 283.

18   Here, the burden of proof is on the advantaged spouse, Michael, to

19   demonstrate that the Interspousal Deed relating to the Livingston Property was not

20   obtained through undue influence. *In re Marriage of Burkle*, 139 Cal.App.4th 712,

21   731 (2006). "[N]umerous cases apply the presumption of undue influence when the

22   marital transaction is one in which one spouse deeds his or her interest in

23   community property to the other spouse, for no consideration or for clearly

24   inadequate consideration." *Burkle*, 139 Cal.App.4th at 731; *Weil v. Weil (Weil)*, 37

25   Cal. 2d 770, 787-89 (1951). The *Burkle* court held that the language of California

26   Family Code § 721 combined with the court's analysis of the case authorities, led it

27   "to conclude that the 'advantage' which raises a presumption of undue influence in

28   a marital transaction involving a contractual exchange between spouses must

8

1   necessarily be an unfair advantage." *Burkle* at 730.  *See also In re Marriage of*
2   *Mathews*, 133 Cal.App.4th 624, 628-629 (2005) (holding that "a spouse obtains an
3   advantage if that spouse's position is improved, he or she obtains a favorable
4   opportunity, or otherwise gains, benefits, or profits").

5       The *Weil* court acknowledges that "when a husband secures a property
6   advantage from his wife, the burden is cast upon him to show that there has been no
7   undue influence." *Weil* at 788.  Cases such as *Weil* and *Haines*, involving property
8   transfers without consideration, necessarily raise a presumption of undue influence,
9   because one spouse obtains a benefit at the expense of the other, who receives
10  nothing in return." *Burkle* at 731-32. Thus, the advantage obtained "may be
11  reasonably characterized as a species of unfair advantage." *Id.* (noting that not just
12  any advantage would suffice to generate the presumption of undue influence).

13      Once an unfair advantage is established, the advantaged spouse bears the
14  burden of proving, by a preponderance of the evidence, that the transaction was not
15  the result of undue influence.  In *In re Estate of Cover*, 188 Cal. 133 (1922), the
16  court found . . . "undue influence upon the theory that . . . the agreement in question
17  was procured from the wife as the result of constructive fraud, having its origin in
18  the confidential and fiduciary relation of husband and wife . . . ." *Id.* at 142-43.
19  The *Cover* court found that the wife executed the agreement "in ignorance of her
20  rights and without independent advice as to its meaning and effect." *Id.* at 145.  The
21  court further found that the wife released her expectancy to her portion of a two
22  hundred thousand dollar estate in return for the wholly inadequate consideration of
23  property valued at fourteen thousand dollars. *Id.* at 137, 144.

24      In the case, *In re the Marriage of Delaney*, 111 Cal.App.4th 991, 999-1000
25  (First Dist. 2003), the court iterated the following factors which the advantaged
26  spouse must establish to overcome the presumption:

27      1. That the transmutation of the property to joint tenancy was freely and
28  voluntarily made;

9

2.  with full knowledge of all the facts; and

3.  with a complete understanding of the effect of a transfer from the spouse's unencumbered separate property interest to a joint interest as Husband and Wife. *Id.*

**Analysis and Conclusions of Law.**

**The Livingston Property was Community Property of the Anderson Marriage.** This analysis begins with acquisition of the Livingston Property. The Livingston Property was acquired during the Anderson Marriage, so the court must initially presume that the Livingston Property was intended to be community property. This result is corroborated by the fact that acquisition of the Livingston Property was substantially funded with community assets and community debt. Araceli signed the Interspousal Deed at Michael's insistence with assurances that she would still have an interest in the Livingston Property and the resulting commercial development. There is no other reasonable explanation for the fact that she also agreed to use community assets to fund the purchase of Livingston Property. There was no evidence that Araceli understood the potential effect of the Interspousal Deed, or that she intended to gift away, or transmute her interest in, the Los Banos Properties and the funds that were used for a down payment for the benefit of Michael alone. Indeed, on several occasions, Michael made affirmative representations to Araceli regarding her ongoing interest in the Livingston Property and the resulting Promissory Note.

Ordinarily, Michael would have the burden of rebutting the "community" presumption by showing that the Livingston Property was never intended to be community property. However, Michael did not appear or testify at trial. Based thereon, the court finds that Michael has waived any interest he may have in the Promissory Note. In doing so, Michael has also failed to sustain his burden of proof to rebut the presumption of undue influence and show that the Livington Property was not community property.

10

1  **Harless' Defenses.** Harless contends that the Promissory Note is Michael's
2  sole and separate property because Araceli signed the Interspousal Deed,
3  purportedly relinquishing her "community" interest in the Livingston Property.
4  Harless testified that he never understood Araceli to have any interest in the
5  Livingston Property. However, Harless offered no evidence to show that the
6  Interspousal Deed was executed for Harless' benefit or that he relied in any way on
7  the Interspousal Deed. Moreover, Harless failed to show that he has any pecuniary
8  interest in the court's determination of the Promissory Note's "community" status.
9  Harless is the obligor on the Promissory Note and it makes no legal difference to
10 him whether that obligation is enforced by Michael or by the Trustee. Harless is a
11 stranger to the Anderson Marriage and has no standing to assert Michael's interest
12 in, or objections to, the character of the Promissory Note.
13     The doctrine of "prudential standing" requires that a party assert his own
14 claims, rather than the claims of another. *In re Weisband*, 427 B.R. 13, 18 (Bankr.
15 D.Ariz. 2010). Federal courts must be hesitant to resolve controversies involving
16 the rights of third parties who are not before the court. "It may be that the holders
17 of those rights have simply chosen not to assert them." *Korneff v. Downey Regional*
18 *Medical Center-Hospital, Inc. (In re Downey Regional Medical Center-Hospital,*
19 *Inc.),* ___ B.R. ___, 2010 WL 5059586 (9th Cir. BAP 2010) (citations omitted).
20     Harless argued at trial that the Promissory Note is worthless and
21 unenforceable because the commercial development project on the Livingston
22 Property failed. The Livingston Property was lost to foreclosure after Michael and
23 Harless executed the buyout agreement. Harless also argued that Michael
24 committed fraud in connection with the buyout agreement and his management of
25 the Livingston Property. Harless does have standing to assert any personal defenses
26 to enforcement of the Promissory Note itself, and the Trustee would be bound by
27 any ruling on those defenses. However, Harless did not assert his defenses by way
28 of counterclaim or affirmative defense.

11

1    Harless' defenses are obviously prejudicial to the Trustee. They represent

2    new matters extraneous to the Trustee's *prima facie* case which, it proved, would

3    deny the Trustee's right to enforce the Promissory Note. As such, they constitute

4    affirmative defenses which should have been raised in Harless' responsive pleading

5    or in some subsequent pleading prior to trial. As a general rule, an affirmative

6    defense is waived if it would be prejudicial to the plaintiff and was not timely raised

7    in the proceeding. *See Marshack v. Orange Commercial Credit (In re National*

8    *Lumber and Supply, Inc.)*, 184 B.R. 74, 79 (9th Cir. BAP 1995). Harless' defenses

9    to enforcement of the Promissory Note have been waived.

10   **Conclusion.**

11       Based on the foregoing, the court finds and concludes that Michael's 50%

12   interest in the Livingston Property was community property of the Anderson

13   Marriage prior to the time it was sold to Harless. Accordingly, the Promissory Note,

14   which represents the proceeds from sale of the community property, was also

15   community property and became property of the bankruptcy estate upon

16   commencement of this case. Michael failed to overcome the "community property"

17   presumption and the presumption of undue influence relating to the manner in

18   which he took title to the Livingtson Property. By failing to appear at trial, Michael

19   has waived the right to assert a "separate" property interest in the Promissory Note.

20       Harless is the obligor on the Promissory Note. He has no pecuniary interest

21   in the court's determination of the Promissory Note's "community property" status.

22   Further, the defenses which Harless raised for the first time at trial were not

23   properly pled by way of counterclaim or affirmative defense and are thereby waived.

24   The Promissory Note may therefore be enforced, according to its terms by the

25   Trustee. The Trustee shall submit a proposed judgment.

26       Dated: January ___2/___, 2011

27

28                                          W. Richard Lee
                                           United States Bankruptcy Judge

12